UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

----------------------------------------------------------------------X

JOSEPH LICATA,

                    Plaintiff,

      -against-

DEBRA MARY KAPLAN, SUFFOLK COUNTY
CPS - PATRICIA ALHIGHT, SUFFOLK COUNTY
POLICE, P.O. 5591 MICHAEL CAMMARATA,
P.O. 5737 BRIAN GRENZ, SUFFOLK COUNTY
DISTRICT ATTORNEY [sic] OFFICE, MAYA S.
IYER, SUSAN KAPLAN ELMENDORF and
JOSEPH ELMENDORF,

                Defendants.

**MEMORANDUM & ORDER**
16-CV-2928 (JMA)(GRB)

----------------------------------------------------------------------X

JOSEPH LICATA,
                Plaintiff,

      -against-

MERYL LEFF, ALISON M. ANDERSON,
DEBRA M. KAPLAN, SUSAN KAPLAN ELMENDORF,
PATRICIA ALHIGHT – CPS,

                Defendants.

17-CV-2714 (JMA)(GRB)

----------------------------------------------------------------------X

**AZRACK, District Judge:**

On June 2, 2016, <u>pro se</u> plaintiff Joseph Licata ("plaintiff") filed an <u>in forma pauperis</u>

complaint pursuant to 42 U.S.C. §1983 ("Section 1983") in this Court against Debra Mary Kaplan,

Suffolk County Child Protective Service, the Suffolk County District Attorney's Office, Susan

Ann Elmendorf, and the Suffolk County Police. (<u>See</u> Docket Entry No. 1.) On June 21, 2016,

plaintiff filed a motion for leave to file an amended complaint and, on June 23, 2016, he filed a

proposed amended complaint, followed by a "supplemental complaint" on June 28, 2016. (<u>See</u>

Docket Entry Nos. 6-7, 9.)   By Electronic Order dated June 29, 2016, Magistrate Judge Gary R. Brown apprised plaintiff that, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, plaintiff was allowed to amend his complaint *once* as a matter of course and without leave of the court.   (See Electronic Order, dated June 29, 2016, Brown, M.J.) (emphasis added). Notwithstanding Magistrate Judge Brown's Order, plaintiff filed a second amended complaint on July 20, 2016 ("SAC") against Debra Mary Kaplan ("Kaplan"), Suffolk County Child Protective Services ("CPS"), Patricia Alhight ("Alhight" and, together with CPS, the "CPS defendants"), the Suffolk County Police ("SCPD"), P.O. 5591 Michael Cammarata ("P.O. Cammarata"), P.O. 5737 Brian Grenz ("P.O. Grenz"), the Suffolk County District Attorney's Office ("SCDA"), Maya S. Iyer ("Iyer"), Susan Kaplan Elmendorf ("S. Elmendorf") and Joseph Elmendorf ("J. Elmendorf," together, the "Elmendorfs").

On November 16, 2016, the undersigned issued an order directing plaintiff to show cause in writing, on or before December 15, 2016, why the July 20, 2016 Amended Complaint should be deemed the operative pleading.   Plaintiff was cautioned that failure to timely comply with the order would lead to the dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure 41(b).   In addition, the Court held plaintiff's application to proceed in forma pauperis in abeyance pending plaintiff's response to the Order to Show Cause.

On December 14, 2016, plaintiff timely filed a response to the Order to Show Cause asking that the Court "accept" the SAC and explaining that he inadvertently omitted a defendant, the SCDA, in the June 28, 2016 filing.[1]   Given plaintiff's pro se status, the Court grants plaintiff's

---

[1] Notwithstanding plaintiff's representation that he filed the SAC to add the SCDA as a defendant, the Court has reviewed the SAC and finds that it is significantly different from the complaints plaintiff filed in June 2016.

request and deems the SAC[2] to be the operative complaint.

On April 28, 2017, plaintiff filed another in forma pauperis complaint pursuant to Section 1983 (the "April Complaint") against several of the same defendants named in the SAC, namely Kaplan, Susan Elmendorf, and Alhight.   Plaintiff also names Meryl Leff ("Leff") and Alison M. Anderson ("Anderson") in the April Complaint.   Plaintiff alleges in the April Complaint that he has "begun other lawsuits in state or federal court dealing with the same facts involved in this action" and lists 16-CV-2928 as that other action.   (See April Compl. ¶¶ I.A., 3.)

For the reasons that follow, the Court grants plaintiff's requests to proceed in forma pauperis, consolidates the SAC and the April Complaint under the earlier filed case, 16-CV-2928, and directs that the case assigned docket number 17-CV-2714 be closed.

For the reasons that follow, the SAC and the April Complaint are sua sponte dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii).

## I.   BACKGROUND

### A.   The SAC

All material allegations in the SAC and April Complaint are assumed to be true for the purpose of this Order.[3]   See, e.g., Rogers v. City of Troy, New York, 148 F.3d 52, 58 (2d Cir. 1998) (explaining that in reviewing a pro se complaint for sua sponte dismissal, a court is required to accept the material allegations in the complaint as true).

The SAC, brought pursuant to Section 1983, is a rambling, disjointed mix of conclusory

---

[2]  Because the SAC is not compromised of numbered paragraphs and does not include page numbers, the Court refers to the pagination assigned by the Court's electronic case filing system (ECF) to refer to specific sections of the SAC.

[3]  Excerpts from the SAC and April Complaint are reproduced here exactly as they appear in the originals.   Errors in spelling, punctuation, and grammar have not been corrected or noted.

allegations that is difficult to comprehend. The SAC is, in large part, comprised of excerpts that appear to have been cut and pasted throughout the document from legal articles, statutes, and cases. Plaintiff's factual allegations appear to center around underlying child custody and visitation disputes with his estranged wife, Kaplan, and other related events, including an allegedly unlawful search and an allegedly unlawful arrest.

Specifically, plaintiff alleges that, at some point in February 2015, Kaplan and the Elmendorfs falsely reported to the police that plaintiff owns unregistered handguns and weapons. (SAC at 8, 9.) According to the SAC, with the help or advice of unidentified Suffolk County police officers, Kaplan and the Elmendorfs violated his Fourth Amendment rights when Kaplan and Elmendorf "hire[d] a locksmith a[nd] destroy[ed] a safe at 26 Montauk [D]rive [B]ay [S]hore without a warrant." (Id. at 9.) Plaintiff claims that no weapons were found in the safe. (Id.)

Plaintiff also attempts to raise false arrest and malicious prosecution claims stemming from his arrest in August 2015 and his subsequent prosecution by the SCDA. (Id. at 3.) Plaintiff alleges that Kaplan, CPS, and the two police officer defendants "coerced . . . tricked … [and] … deceived" his "mentally challenged" children,[4] into filing a complaint against him, leading to plaintiff's arrest. (Id. at 2–4.) Plaintiff also appears to allege that Iyer, the children's therapist, called police to falsely report plaintiff in order to have him arrested. (Id. at 8.) Plaintiff further alleges that: (1) the police officer defendants "failed to fully investigate, interview witnesses and did not follow ADA accommodations for both children"; and (2) that the SCPD does not properly train its officers to recognize disabilities. (Id. at 4-5.)

---

[4] Plaintiff alleges that "both children are diagnosed with autism and JL with mental retardation and several other disabilities." (SAC at 4.)

Finally, plaintiff alleges that the CPS defendants violated his due process rights by, among other things, filing reports and preventing him from seeing his children on holidays, at school events and at doctor appointments.   (Id. at 10-11, 13.)

As a result of the alleged constitutional violations, plaintiff claims he has been damaged financially and emotionally and seeks punitive and compensatory damages totaling nearly fifteen million dollars.   (Id. at 15.)

## B.     The April Complaint

Plaintiff's April Complaint is submitted on the Court's Section 1983 complaint form and is brief.   In its entirety, plaintiff alleges:

> Meryl Left – Alison M. Anderson has violated my due process clause of the 14th Ammendment the parent child relationship is a liberty interest protected by the due process clause of the US Constitution and is embodied in the concept of liberty under 14th and 5th Ammendment.   A farther has the right to enjoy to associate with his children to care for there health.   A parent's right to care and the companionship of his or her children are so fundamental as to be protected under the First, Ninth and 14th Ammendments of the United States Constitution.   Loss of the First Ammendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury.   Debra M. Kaplan and Susan Elmendorf has ebetted in this injury to destroy the farthers constitutional rights.

(April Compl. ¶ IV.)   In the space on the form complaint that calls for a description of any claimed injuries, plaintiff alleges "emotional distress, PTSD, parental alienation, campaign of denigration against farther."   (Id. ¶ IV.A.)   For relief, plaintiff seeks an order directing "the plantifs not to overreach also $500,000 for emotional distress – suffering."   (Id. ¶ V.)

## II.     DISCUSSION

## A.     Consolidation of the SAC and the April Complaint

Under Federal Rule of Civil Procedure 42, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the

actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "The trial court has broad discretion to determine whether consolidation is appropriate." Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990). Consolidation is appropriate in order to serve the interests of judicial economy. See, e.g., Jacobs v. Castillo, No. 09-CV-953, 2009 WL 1203942, at *3 (S.D.N.Y. Apr. 23, 2009) ("Consolidation would further the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). Specifically, consolidation of cases with common questions of law or fact is favored "to avoid unnecessary costs or delay," Johnson, 899 F.2d at 1284, and to "expedite trial and eliminate unnecessary repetition and confusion," Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 130 (internal citations omitted).

"The Second Circuit has long adhered to the first-filed doctrine in deciding which case to dismiss where there are competing litigations. Where there are several competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." Kellen Co. v. Calphalon Corp., 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999) (internal quotation marks, alterations, and citations omitted); accord Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991); First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989). The first-filed rule seeks to conserve judicial resources and avoid duplicative litigation. See Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991); First City Nat'l Bank & Trust Co., 878 F.2d at 80; Kellen, 54 F. Supp. 2d at 221. Here, the complaints filed by plaintiff, although difficult to comprehend, appear to allege deprivations of his constitutional rights by the named defendants, several of whom are defendants in both complaints. Indeed, plaintiff alleges

that the facts involved in each complaint are the same. (See April Compl. ¶¶ I.A, B.3.) Accordingly, the Court orders that plaintiff's complaints be consolidated pursuant to Federal Rule of Civil Procedure 42 into the first filed case, 16-CV-2928. The Clerk of Court is directed to: (1) consolidate these actions; and (2) mark the April Complaint (17-CV-2714) closed. Any future filings are to be docketed in only 16-CV-2928.

**B.      In Forma Pauperis Applications**

Upon review of plaintiff's declarations in support of the applications to proceed in forma pauperis, the Court finds that plaintiff is qualified to commence these actions without prepayment of the filing fees. 28 U.S.C. § 1915(a)(1). Therefore, plaintiff's applications to proceed in forma pauperis are granted.

**C.      Standard of Review**

Pursuant to the in forma pauperis statute, a court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915 (e)(2)(B).

Pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). In addition, the court is required to read the plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The Supreme Court has held that pro se complaints need not even plead specific facts; rather the complainant "need only give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

**D.    Section 1983**

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). "To avoid sua sponte dismissal of a Section 1983 claim, a plaintiff must allege that (1) the defendant was a state actor, *i.e.*, acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." Milan v.

Wertheimer, 808 F.3d 961, 964 (2d Cir. 2015) (<u>per</u> <u>curiam</u>) (internal quotation marks and citation omitted).

### 1. Claims Against the SCDA

The Eleventh Amendment divests this Court of subject matter jurisdiction over any claim for monetary damages against a state actor acting in his official capacity. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). "It is well-established that New York State has not consented to Section 1983 suits in federal court . . . and that Section 1983 was not intended to override a state's sovereign immunity." <u>Mamot v. Board of Regents</u>, 367 F. App'x 191, 192 (2d Cir. 2010) (internal citation omitted).

Plaintiff's claims against the SCDA must be dismissed because states and state officials acting in their official capacity are protected by sovereign immunity as guaranteed by the Eleventh Amendment. <u>See</u> <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984); <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted). Where, such as here, a district attorney is sued for damages in his or her official capacity, immunity under the Eleventh Amendment may attach to bar the suit, as the suit is construed as being against the State of New York. <u>See</u> <u>Amaker v. N.Y. State Dep't of Corr. Servs.</u>, 435 F. App'x 52, 54 (2d Cir. 2011) (holding that a district attorney and an assistant district attorney "benefited from New York's Eleventh Amendment immunity against suit" because they were sued in their official capacities) (citing <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 529 (2d Cir. 1993) (holding that district attorney represents the state, not the county, and so is entitled to Eleventh Amendment immunity).

Here, because plaintiff seeks exclusively monetary damages from the SCDA, the Eleventh

9

Amendment precludes plaintiff's claims. See Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997). Accordingly, plaintiff's claims against the SCDA are not plausible and are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii).

## 2. Claims Against the SCPD, CPS and Suffolk County

Plaintiff names the SCPD and CPS as defendants. However, the SCPD and CPS are non-suable entities because they are merely administrative arms of a municipality, the County of Suffolk. "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." See Rose v. Cnty. of Nassau, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (citing Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); see also Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claim against the local police department because, as an "administrative arm of a municipality [, it] do[es] not have legal identity separate and apart from the municipality, and therefore, cannot sue or be sued."); Bey v. State of New York, No. 11-CV-3296, 2013 WL 3282277, at *5 (E.D.N.Y. June 25, 2013) (dismissing claims against Nassau County Child Protective Services because it "is an administrative arm of the County, and not an independent legal entity, it lacks the capacity to be sued").

Even if plaintiff had sued the correct municipal entity—Suffolk County—plaintiff has not plausibly alleged any claims against the County. A municipality such as Suffolk County may be liable under Section 1983 only if the "plaintiff proves that action pursuant to official . . . policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978); see also Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004). Thus, to impose liability on a municipality, the plaintiff must prove that a municipal policy or custom caused a deprivation of the plaintiff's rights. See Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 137 (2d Cir. 1999).

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the existence of a formal policy officially endorsed by the municipality, (2) actions taken or decisions made by an official with final decision making authority, (3) a practice so persistent and widespread that it constitutes a custom, or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to a "deliberate indifference" to the rights of those who come in contact with the municipal employees. Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002); Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). "[A] single incident in a complaint, especially if it involved only actors below the policy making level, does not suffice to show a municipal policy." DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks and citation omitted).

As explained in depth below, plaintiff has failed to plead plausible claims concerning the allegedly unlawful search and arrest or the alleged misconduct of Alhight, an employee of CPS. Absent any underlying violation by one of its employees, Suffolk County cannot possibly be held liable under Section 1983. Moreover, to the extent that the SAC attempts to allege claims based on the actions of unidentified police officers or CPS employees, nothing in the SAC plausibly alleges a basis for municipal liability concerning any of plaintiff's claims.

### 3. Claims Against the Individual Defendants

In order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. Farid v. Elle, 593 F.3d 233, 249 (2d Cir. 2010). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010).

A plaintiff must also allege that the individual's conduct challenged was "committed by a person acting under color of state law . . . ." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010)

(quoting <u>Pitchell v. Callan</u>, 13 F. 3d 545, 547 (2d Cir. 1997)).    Private actors may be considered to be acting under the color of state law for purposes of Section 1983 if the private actor was a "'willful participant in joint activity with the State or its agents.'"    <u>Ciambriello v. Cty. of Nassau</u>, 292 F. 3d 307, 324 (2d Cir. 2002) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970)).    Section 1983 liability may also extend to a private party who conspires with a state actor to violate a plaintiff's constitutional rights.    <u>Id.</u> at 323–24.    To state a plausible Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."    <u>Id.</u> at 324-25 (citing <u>Pangburn v. Culbertson</u>, 200 F.3d 65, 72 (2d Cir. 1999)).

### i.    *Claims Against Iyer, Kaplan, Leff, Anderson, and the Elmendorfs*

Insofar as plaintiff seeks to sue Iyer, Kaplan, Leff, Anderson, and the Elmendorfs pursuant to Section 1983, such claims are implausible because each of these individuals is a private party who does not act under color of state law.

Although Leff and Anderson are named as defendants in the April Complaint, there are no factual allegations against either of them, much less allegations that they are state actors.

Iyer is alleged to be a psychologist who treated plaintiff's children.    Kaplan is alleged to be plaintiff's estranged wife and the mother of his children and the Elmendorfs are alleged to be Kaplan's sister and brother-in-law.    Plaintiff's allegations concerning the involvement of Kaplan, Iyer, and the Elmendorfs in the alleged unlawful search and unlawful arrest are addressed in further detail below.    As explained below, none of allegations in the SAC are sufficient to allege plausible claims against any of the defendants.

### ii.    *Unlawful Search Claim*

Plaintiff appears to allege that Kaplan and the Elmendorfs, acting at the direction of

unidentified Suffolk County police officers, violated plaintiff's Fourth Amendment rights by hiring a locksmith to break into a safe located at 26 Montauk Highway. Plaintiff, however, has not plausibly pled an unlawful search claim.

Even assuming, for the sake of argument, that plaintiff could plausibly allege that the Elmendorfs and Kaplan engaged in joint action or a conspiracy with the unidentified Suffolk County police officers, plaintiff's claims concerning this incident still fail because he has not plausibly alleged an underlying constitutional violation.

Critically, plaintiff alleges that *Kaplan* resides at 26 Montauk Highway. Thus, Kaplan, as a resident at the address in question was authorized to—and did—consent to the allegedly unlawful entry and search. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990) (Fourth Amendment's prohibition of "warrantless entry of a person's home . . . to search for specific objects" does not apply "to situations in which voluntary consent has been obtained, either from the individual whose property is being searched . . . or from a third party who possesses common authority over the premises.") (citations omitted); see also United States v. Powers, 432 F. App'x 16 (2d Cir. 2011) (summary order) (holding that wife's consent to search home included search of the contents of her husband's computer within the home and thus fell "within the consent exception to the Fourth Amendment's warrant requirement."); United States v. Lopez, 547 F.3d 397, 399-400 (2d Cir. 2008) ("law enforcement officers are under no affirmative obligation to request consent from a potentially objecting co-occupant before acting on permission they received from another occupant"); cf. Young v. Cnty. of Suffolk, 922 F. Supp. 2d. 368, 390-93 (E.D.N.Y. 2013) (dismissing wife/mother's claims alleging a violation of the Fourth Amendment because estranged husband/father had apparent authority to authorize entry to the home where his children resided with their mother). Moreover, plaintiff does not allege that he even resided at 26 Montauk Highway—in fact, he provides a different address for himself in the SAC, 1425 Thompson Drive,

Bay Shore, (SAC at 15). Accordingly, it does not appear that plaintiff even has standing to raise this Fourth Amendment challenge.

In sum, plaintiff has not alleged a plausible constitutional claim arising from the entry and search at 26 Montauk Highway, Bay Shore. Thus, plaintiff's Section 1983 claims against all defendants concerning the February 2015 entry and search are not plausible and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### iii. *False Arrest Claim*

Plaintiff appears to allege that he was falsely arrested in August 2015 and was subsequently maliciously prosecuted.

Plaintiff claims that Kaplan, along with P.O. Cammarata and P.O. Grenz, "[e]ncouraged and tricked" his children into signing "arrest statements" against plaintiff. (SAC at 2, 4.)

"There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). Similarly, to establish a claim of malicious prosecution, a plaintiff must prove, among other things, that the defendant lacked probable cause to commence a criminal proceeding against the plaintiff. Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010); see also Betts v. Rodriguez, No. 15-CV-3836, 2016 WL 7192088, at *3 (S.D.N.Y. Dec. 12, 2016) ("Probable cause is an absolute defense to false arrest and malicious prosecution claims asserted under section 1983." (citing Thompson v. City of New York, 592 F. App'x 36, 37 (2d Cir. 2015))).

"Probable cause [to arrest] exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (quoting Williams v. Town of Greenburgh, 535 F.3d 71, 79 (2d Cir. 2008)). "Once officers possess facts sufficient to establish probable cause,

they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989).

At the outset, it must be stressed that many of plaintiff's allegations concerning his August 2015 arrest are simply nonsensical and, thus, cannot possibly give rise to any plausible claims. (See, e.g., Compl. at 2 ("[O]fficer Cammarata and officer Grenz went beyond and needed to use Power and control In order to coerce, trick, and deceive two disabled children into adopting the details fed to him in Confession Complaint.").

Moreover, none of the SAC's allegations are sufficient to plead plausible claims against Kaplan, Iyer, P.O. Cammarata or P.O. Grenz.

Plaintiff has not plausibly alleged that Kaplan was engaged in joint action or a conspiracy with the police concerning plaintiff's arrest in August 2015. The SAC alleges that:

> [Plaintiff's son,] Joseph Angelo Licata, was manipulated by [Kaplan], CPS and Suffolk county police Officers into adopting the details manipulated to the children then [Kaplan] used the telephone to have the children give a fraudulent confession to these officers and then the officers explained step by step how to get the children down to the police station to sign a complaint.

(SAC at 2.) The SAC also alleges that the officers "schemed with [Kaplan] to bring the children down to police and sign a statement." (Id. at 6.) These conclusory assertions of conspiracy are insufficient to plausibly allege that the officers and Kaplan conspired to have plaintiff falsely arrested. The SAC's remaining allegations concerning Kaplan and the police officers simply group Kaplan and the officers together and claim that they collectively "tricked" and "exploited" Licata's children and gave the children "borrowed scenarios." (Id. at 2.) The SAC provides no further details explaining what each of the specific participants did. Such allegations are insufficient to plausibly allege conspiracy or joint action involving Kaplan.

Plaintiff's allegations against Iyer are also insufficient to establish a conspiracy between

Iyer and the police officers.    The complaint merely alleges that Iyer provided false information to the police officers.    (Id. at 8.)    This is insufficient to establish joint action or conspiracy with the officers.

Plaintiff also fails to plausibly plead claims for false arrest against P.O. Cammarata and P.O. Grenz (collectively, the "Officer Defendants").    Although the Officer Defendants are clearly state actors under § 1983, plaintiff's false arrest claims against those officers are not plausible because the allegations in the SAC do not plausibly suggest that the officers knew that the "confession" the children provided was false when they arrested plaintiff.    The SAC's confusing allegations appear, at best, to suggest that Kaplan initiated this entire sequence of events by having the children give false information over the telephone to the police, who then told Kaplan how to bring the children down to the police station to sign a complaint against plaintiff.    For example, the SAC alleges:

- "[Kaplan] used the telephone to have the children give a fraudulent confession to these officers and then the officers explained step by step how to get the children down to the police station to sign a complaint."    (SAC at 2.)

- "The complaints taken from police are borrowed scenarios from Debra Kaplan [and] Susan Kaplan['s] complaints filed in Family Court in 2015." (Id.)

- "In order to coerce, trick, and deceive Joseph Angelo Licata diagnosed with Moderate mental Retardation and Autism was manipulated by DEBRA MARY KAPLAN, CPS and Suffolk county police Officers into adopting the details fed to the children then Debra Mary Kaplan over the telephone and taken to the police station GOING on her say used her children as weapons against the farther." (Id. at 3 (emphasis added).)

- "BOTH CHILDREN HAVE MULTIPLE DISABILITIES AND REQUIRE SEVERAL THERAPIST TO COMPLETE A SCHOOL DAY, LET ALONE BEING DRIVEN DOWN TO A POLICE STATION UNDER DURESS FROM A EMOTIONALLY DISTURBED, PYSCHOTIC PERSON DEBRA M KAPLAN -SUSAN ANN ELMENDORF."    (Id. at 4 (emphasis added).)

The sequence of events set out in these confusing allegations does not plausibly suggest that the

officers knew that that the children were lying.   Rather, these allegations indicate that Kaplan, acting independent of the officers, initiated the entire sequence of events.

Additionally, the SAC's allegations that the Officer Defendants failed to adequately investigate the statements made by plaintiff's children are insufficient to undermine probable cause.   Plaintiff alleges that the officers failed to interview unspecified witnesses and failed to review psychiatric records that plaintiff apparently offered to them showing that plaintiff's son was diagnosed with "Mental Retardation and several other disabilities."   (Id. at 11; see also id. at 2.)   These allegations do not undermine probable cause because, among other things:   (1) the SAC does not indicate that plaintiff offered the police any medical records that would have led them to question the incriminating statements made by plaintiff's daughter; (2) the police were not required to review the medical records offered by plaintiff when the authenticity and completeness of the records may not have been apparent; and (3) these records were not exculpatory and, at best, may have led to questions about the reliability of one of the two witnesses.   Cf. Panetta v. Crowley, 460 F.3d 388, 397–98 (2d Cir. 2006) (finding that an officer, who arrested an individual for animal cruelty based on witness's statements and on his own observations of the plaintiff's horse was not required to call the horse's veterinarian, as he was "not required to explore and eliminate every theoretically plausible claim of innocence"); Weiner v. McKeefery, 90 F. Supp. 3d 17, 32 (E.D.N.Y. 2015) (finding that officers had probable cause to arrest the plaintiff even though witnesses were young children who were part of an acrimonious divorce between plaintiff and their mother, and the police refused to listen to a recording of the incident made by plaintiff).

In light of all of the above, plaintiff's own allegations in the SAC establish that the Officer

Defendants had probable cause to arrest him.[5]

Accordingly, plaintiff's Section 1983 claims against all defendants concerning his August 2015 arrest and prosecution are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### iv. *Claims Concerning Alhight and CPS*

Plaintiff alleges that the CPS defendants violated his due process rights by, among things, filing reports and preventing him from seeing his children on holidays, at school events and at doctor appointments.   (SAC at 10-11, 13.)   Defendant Alhight is an employee of CPS.

With respect to Alhight, the bulk of plaintiff's allegations concerning CPS do not explicitly address Alhight's involvement in any specific adverse action that CPS took against plaintiff.   At one point, plaintiff alleges that:

> THE PLANTIFF HAS SUFFERED FROM THE NEGLEGENCE OF CPS AGENT PATRICIA ALHIGHT AND THE SUFFOLK COUNTY CPS HAS PLACED A GROSS AMMOUNT OF INDICATED REPORTS AGAINST THE FARTHER AND TARGETED THE FARTHER .IN RETURN THEY TOOK AWAY THE FARTHER AWAY FROM THE CHILDREN AND VIOLATED HIS DUE PROCESS RIGHTS TO SEE HIS CHILDREN AT BIRTHDAY PARTIES, CHRISTMAS, EASTER, FARTHERS DAY, SCHOOL EVENTS, THANKSGIVING, CANNOT SEE CHILDREN IN PUBLIC SCHOOL MEETINGS OR SCHOOL EVENTS OR DOCTOR APPOINTMENTS OR AUTISM EVENTS.

(Id. at 11.)   This conclusory allegation of negligence against Alhight does not raise a

---

[5]   The SAC does not identify the crime for which plaintiff was arrested or the specific information that the children provided to the officers.   The SAC, however, does explicitly allege that "Defendant police officers into coercing, malicious prosecution orchestrating a confession on two children with disabilities 'confessing' to a crime that farther did not commit."   (SAC at 1 (emphasis added).)   Accordingly, the only inference that can be drawn from this allegation is that the information provided by the children indicated, on its face, that plaintiff had committed a crime. Nothing in the SAC suggests otherwise.   Rather, the crux of plaintiff's allegations is that the children provided false, but incriminating, information to the police that was used to justify plaintiff's arrest.

constitutional due process claim.   See Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 104–05 (2d Cir. 1999).[6]   Also, the second sentence in the excerpt from the SAC quoted above simply refers to Alhight and CPS as "they" and does not address Alhight's personal involvement in any specific deprivations.   Furthermore, the mere fact that CPS prevented plaintiff from seeing his children on certain occasions is not a due process violation.   (See id.)

Plaintiff's only remaining allegation concerning Alhight is plaintiff's claim that, during a phone call, Alhight stated, "I FULLY SUPPORT DEBRA MARY KAPLAN AND I WILL MAKE SURE SHE DOES NOT GET IN TROUBLE AND I AM ON HER SIDE AND AGAINST THE FARTHER.THE FARTHER WAS PLACED IN A CENTRAL REGISTRE AS A THREAT TO CHILDREN."   (SAC at 11.)   This allegation cannot save plaintiff's claims against Alhight because, among other things, plaintiff has not alleged:   (1) that Alhight falsified any information; or (2) that Alhight's conduct resulted in any adverse actions being taken against him.

Finally, none of the allegations above nor the other allegations in the SAC concerning CPS plausibly allege any policy or custom of Suffolk County that would render Suffolk County liable for any of the alleged constitutional violations committed by Alhight or other unidentified CPS employees.

For the reasons stated above, plaintiff's claims concerning CPS and Alhight are

---

[6] In Wilkinson, the Second Circuit stated that:

> Case workers cannot be free to substantiate a claim of abuse, for instance, by ignoring overwhelming exculpatory information or by manufacturing false evidence.   The difficulty of balancing the weighty interests apparent in the abuse context, however, has prompted courts to impose few concrete restrictions on case workers, in exercising their discretion, short of these obvious extremes.

> This Circuit has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context.   An investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse.

Wilkinson, 182 F.3d at 104–05 (citations omitted).

implausible and are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) (B)(ii).[7]

**E.  American with Disabilities Act**

Plaintiff attempts to raise claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.   Plaintiff asserts that the police interrogation of his two disabled children violated the ADA.   Plaintiff, however, is not himself disabled and was not the subject of this allegedly improper interrogation.   Accordingly, he does not have standing to raise any claim for a violation of the ADA.

**F.  Leave to Amend**

A *pro se* plaintiff is ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."   Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation marks and alterations omitted)).

Here, the Court has carefully considered whether plaintiff should be granted leave to further amend his complaint.   The Court declines to grant leave to file yet another amended complaint because:   (1) plaintiff has already filed two amended complaint in the 16-CV-2928 case; and (2) plaintiff also filed an additional, largely duplicative, complaint in the 17-CV-2714 case.

---

[7]  Some or all of plaintiff's claims related to child custody matters may also be barred by the "domestic relations exception" to federal subject matter jurisdiction, which "'divests the federal courts of power to issue divorce, alimony, and child custody decrees.'"   Sobel v. Prudenti, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (quoting Akenbrandt v. Richards, 504 U.S. 689, 703 (1992)).   While the domestic relations exception is "narrow," it "'applies generally to issues relating to the custody of minors," and may also apply to "to 'civil rights actions directed at challenging the results of domestic relations proceedings.'"   Id. (quoting Mitchell-Angel v. Cronin, No. 95-CV-7937, 1996 WL 107300, at *2 (2d Cir. Mar. 8, 1996)); see also Guichiardo v. Barrazza, No. 16-CV-1222, 2016 WL 3541547, at *3 (E.D.N.Y. Jun. 23, 2016) (applying the domestic relations exception where the plaintiff "style[d] some of her claims as raising constitutional issues, but the allegations stem from a state domestic relations matter . . . ."); cf. Ashmore v. Prus, 510 F. App'x 47, 49 (2d Cir. 2013) (declining to "address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions").

**G.  Plaintiff's State Law Claims**

Because plaintiff does not have any viable federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims that plaintiff purports to raise in the SAC. Court.  See 28 U.S.C. § 1367(c) (District courts "may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").  Plaintiff may pursue any valid state law claims he may have in state court.

### III.    CONCLUSION

The plaintiff's applications to proceed in forma pauperis are granted.  However, for the reasons set forth above, the complaints are sua sponte dismissed for failure to allege plausible claims for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii-iii).  Plaintiff may pursue any valid state law claims that he may have against the defendants in state court.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this Order to plaintiff.


**SO ORDERED.**

Dated:   December 12, 2017
             Central Islip, New York

                                                     _____/s/ (JMA)_____
                                                     Joan M. Azrack
                                                     United States District Judge